Affirmed and Memorandum Opinion filed February 20, 2007








Affirmed and Memorandum Opinion filed February 20, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-01116-CR

____________

 

CHRISTOPHER PATRICK COTTER, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the County
Criminal Court at Law No. 6

Harris County, Texas

Trial Court Cause No. 1292299

 



 

M E M O R A N D U M   O P I N I O N

Challenging his conviction for the misdemeanor offense of
driving while intoxicated, appellant contends, in one issue, that the trial
court erred in denying his motion to suppress. 

I.  Factual and Procedural
Background








On March 19, 2005, around 3:30 a.m., Officer Brodie Riner
III of the University of Texas Police Department was on patrol when he saw a
2002 Cadillac Deville run a red light at the intersection of Cambridge and Old
Spanish Trail, in Houston, Texas.  The driver of the vehicle, later identified
as appellant, veered to the right, and drove up over the curb, onto the grass
and sidewalk.  Officer Riner immediately pulled in behind appellant, and 
activated his emergency lights.  Appellant drove over the median to make an
illegal u-turn.  Officer Riner observed appellant=s head hanging out
the driver side window.  Officer Riner continued to follow appellant westbound
down Old Spanish Trail, where appellant again drove over the median to make
another illegal u-turn.  Officer Riner commanded appellant to stop his
vehicle.  Appellant refused and continued eastbound on Old Spanish Trail, ran
another red light, and turned southbound onto Cambridge.  Officer Riner
continued to issue appellant commands to stop while appellant fled down
Cambridge to the first turnaround, and then came back up Cambridge to proceed
northbound.  

Appellant stopped at the Fountainbleau Apartments at 7575
Cambridge, pulled up to the gate, and went inside the gated area.  Officer
Riner, directly behind appellant with his vehicle=s lights and
sirens activated, continued to command appellant to pull over.  Appellant
initially refused, but eventually pulled off to the right and stopped when he
entered the gated apartment area.  Officer Riner turned off his siren, and
approached appellant=s car.  As he approached, Officer Riner
detected a strong odor of alcohol emanating from the vehicle.  He noticed that
appellant=s eyes were red and watery.  Appellant, who apparently
had been eating while driving, was covered with food.  Appellant had a blank
stare as Officer Riner questioned him and asked for his driver=s license and
proof of insurance.  After fumbling through his wallet, appellant finally
produced this information.  Officer Riner asked appellant to exit the car,and
to perform certain field sobriety tests.  When appellant refused to comply,
Officer Riner placed him under arrest.  On the way to the police station,
appellant became uncooperative and agitated.  At the police station, appellant
refused to blow into the breathalyzer. 








Appellant was charged by information for the misdemeanor
offense of driving while intoxicated.  The trial court denied appellant=s pretrial motion
to suppress.  Thereafter, appellant waived his right to a trial by jury, and
pleaded guilty to the charged offense.  The trial court found appellant guilty
as charged, and sentenced him to ten days= confinement in
the Harris County Jail.  Appellant now challenges the trial court=s ruling on his
motion to suppress.

II.  Standard of Review

We review the trial court=s ruling on a motion
to suppress under an abuse‑of‑discretion standard.  Long v.
State, 823 S.W.2d 259, 277 (Tex. Crim. App. 1991).  If supported by the
record, a trial court=s ruling on a motion to suppress will not
be overturned. Brooks v. State, 76 S.W.3d 426, 430 (Tex. App.CHouston [14th
Dist.] 2002, no pet.).  At a suppression hearing, the trial court is the sole
finder of fact and is free to believe or disbelieve any or all of the evidence presented. 
Id.  We give almost total deference to the trial court=s determination of
historical facts that depend on credibility and demeanor, but review de novo
the trial court=s application of the law to the facts if
resolution of those ultimate questions does not turn on the evaluation of
credibility and demeanor.  See Guzman v. State, 955 S.W.2d 85, 89 (Tex.
Crim. App. 1997).

III.  Issue and Analysis

In a single issue, appellant contends that the trial court
erred in denying his motion to suppress.  More specifically, appellant contends
that Officer Riner had no authority to stop  and arrest him because it was
outside Officer Riner=s jurisdiction.  Appellant also contends
Officer Riner had no authority to stop him in the apartment complex parking
lot, which he contends was Aprivate property.@[1]  

A.      Was
Officer Riner in his primary jurisdiction when he stopped and arrested
appellant? 

The State contends Officer Riner acted within the scope of
his jurisdiction as defined by section 51.203 of the Education Code. Tex. Educ. Code Ann. ' 51.203 (Vernon
Supp. 2005).  That statute reads, in relevant part: 

(a) The governing boards of each state institution of higher education
and public technical institute may employ and commission peace officers for the
purpose of carrying out the provisions of this subchapter.  The primary
jurisdiction of a peace officer commissioned under this section includes all
counties in which property is owned, leased, rented, or otherwise under the
control of the institution of higher education or public technical institute
that employs the peace officer.   

(b) Within a peace officer=s primary jurisdiction, a peace officer commissioned under
this section: 

(1) is vested with all the powers, privileges, and immunities of peace
officers; 

(2) may, in accordance with Chapter 14, Code of Criminal Procedure,
arrest without a warrant any person who violates a law of the state; and 

(3) may enforce all traffic laws on
streets and highways. 








Id. ' 51.203(a), (b)
(emphasis added).  Under this section, Officer Riner had the authority to stop
and arrest appellant.  The evidence shows that The University of Texas owns
property on several Houston streetsCCambridge, Fannin,
Holcombe, Braeswood, and Bellaire.  Officer Riner testified that, in connection
with his duties as a patrol officer for The University of Texas, he patrols Old
Spanish Trail and Cambridge, between Highway 288, Highway 610, and Highway 59. 
Officer Riner further testified that his jurisdiction includes Harris County,
Galveston County, Travis County, and various other counties.  Officer Riner was
in the 1900 block of Old Spanish Trail near Cambridge when he first observed
appellant=s erratic driving.  It is undisputed that Officer
Riner was commissioned as a peace officer by The University of Texas and that
the university owns property in Harris County. The evidence shows that the
offenses for which the officer stopped and arrested appellant took place in
Harris County, specifically at 7575 Cambridge, a location within Houston,
Texas.  See Watts v. State, 99 S.W.3d 604, 610 (Tex. Crim. App. 2003)
(concluding that a trial court or appellate court can take judicial notice that
a city is within a county).  Under section 51.203, Officer Riner was authorized
to stop appellant for the observed traffic violations and to arrest appellant
for driving while intoxicated.  See State v. Backus, 881 S.W.591, 593
(Tex. App.CAustin 1994, pet. ref=d) (holding that a
university campus police officer is authorized by section 51.203 to enforce
traffic laws, make warrantless arrests for offenses committed in his presence,
and otherwise carry out the duties of a peace officer anywhere in the county or
counties in which the commissioning institution owns or controls property). 

B.      Did
Officer Riner have authority to stop and arrest appellant on the apartment
complex parking lot?   

Appellant contends that Officer Riner did not have the
authority to stop and arrest him while he was in the apartment complex parking
lot.  Appellant argues that the apartment complex parking lot is a Aprotected area.@ [2] 


The touchstone of this Fourth Amendment analysis is whether
a person has a Aconstitutionally protected reasonable
expectation of privacy.@  California v. Ciraolo, 476 U.S.
207, 211, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986).  Consistent with this
analysis, we will address (1) whether the parking lot of appellant=s apartment
complex was part of the curtilage of his apartment, and, if not, (2) whether
appellant had a reasonable expectation of privacy in the apartment complex
parking lot.  See United States v. Dunn, 480 U.S. 294, 107 S.Ct. 1134,
94 L.Ed.2d 326, (1987); Oliver v. United States, 466 U.S. 170, 104 S.Ct.
1735, 80 L.Ed.2d 214 (1984).








The United States Supreme Court has recognized that the
Fourth Amendment protects the curtilage of a house, and has identified
curtilage as Athe area [that] harbors the >intimate activity
associated with the >sanctity of a man=s home and the
privacies of life.= @  See Dunn,
480 U.S. at 300, 107 S.Ct. at 1139 (citations omitted).  In Cuero v. State, the
First Court of Appeals addressed whether a parking area in a fenced condominium
complex qualified as curtilage of one of the residents, stating: 

[the officer] crossed over one
exterior fence of a condominium complex to observe suspected illegal activity
in the parking area of the complex. Even if we were to assume that [appellant]
lived in one of the condominiums, a common area parking lot available to owners
and guests cannot be considered an >area which harbors
the intimate activity associated with the sanctity of a man=s home and the
privacies of life.=  

845
S.W.2d 387, 391 (Tex. App.CHouston [1st Dist.] 1992, pet. ref=d).   Likewise,
the common areas on which appellant relies for his argument were not the
curtilage of his apartment.   See Evans v. State, 995 S.W.2d 284, 285B86  (Tex. App.CHouston [14 Dist.]
1999, pet. ref=d) (concluding that fenced‑in common area of
apartment complex, open to other residents and guests, was not part of
curtilage of defendant=s apartment protected by Fourth
Amendment).  

Despite the fact that the parking lot is not the curtliage
of his apartment, appellant is nevertheless protected by the Fourth Amendment
if he possessed a reasonable expectation of privacy in that area.  See Dunn,
480 U.S. at 303, 107 S.Ct. at 1140.   The general premise, however, is that the
common areas of an apartment complex that include the parking lots and
sidewalks are public areas in which the residents have no reasonable
expectation of privacy. See Bower v. State, 769 S.W.2d 887, 897‑98
(Tex. Crim. App.1989); see also Tex.
Pen. Code Ann. ' 1.07(a)(40) (Vernon 1994) (defining a Apublic place@ as any place where
a substantial group of the public has access, including, but not limited to,
the common areas of apartment houses).  Moreover, erection of a security fence
or gate alone does not create a constitutionally protected expectation of
privacy.  See Dunn, 480 U.S. at 301 n. 4, 107 S.Ct. at 1139 n. 4. 








Even if appellant had an actual expectation of privacy in
the common areas of his apartment complex, that expectation of privacy must be
one that society is prepared to recognize as reasonable.  See Oliver,
466 U.S. at 177, 104 S.Ct. at 1741.  It is clear from the record that the area
of the apartment complex in question, although fenced, was open to any resident
or guest as a common means of ingress and egress.  Given the nature and use of
the area, we cannot say that appellant=s actual
expectation of privacy is one that society is prepared to recognize as
reasonable.  See Evans, 995 S.W.2d at 287.  Therefore, we hold the stop
and arrest did not violate either the United States or Texas Constitutions,
because appellant had no reasonable expectation of privacy in the parking lot
of his apartment complex. 

The trial court did not abuse its discretion in denying
appellant=s motion to suppress. We overrule appellant=s only issue on
appeal, and we affirm the trial court=s judgment.

 

 

 

/s/      Kem Thompson Frost

Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed February 20, 2007.

Panel consists of
Justices Frost, Seymore, and Guzman.

Do Not Publish C Tex. R. App. P. 47.2(b).

 

 

 









[1]  Appellant does not contend that Officer Riner lacked
reasonable suspicion or probable cause to make the stop and arrest, but only
that Officer Riner did not have the authority or jurisdiction to stop
appellant, or to arrest him in a private place.  Therefore, we do not reach the
issue of whether reasonable suspicion or probable cause to arrest existed.  





[2]  At the motion-to-suppress hearing, appellant
testified that he lived in apartment 10033 at the Fontainebleau Apartments.